1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KAIAN BRANDON,                          No.  2:14-CV-2883-TLN-DMC-P

12                    Plaintiff,

13         v.                                  FINDINGS AND RECOMMENDATIONS

14    L. WILLIAMS, et al.,

15                    Defendants.

16    _____

17             Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the court are the following: (1) plaintiff's motion for summary

19    judgment[1] (Doc. 49); (2) cross-motion for summary judgment filed by defendants Busig,

20    Mitchell, Muhammad, and Williams (Doc. 45); and (3) a separate cross-motion for summary

21    judgment filed by defendant Hendricks (Doc. 39).[2]

22    / / /

23    / / /

24    _____

25         [1]      While plaintiff captions his motion as a motion for "partial summary judgment,"
      plaintiff argues he is entitled to judgment as a matter of law as against each defendant on the
26    single legal claim raised in the complaint, specifically whether defendants violated his Eighth
      Amendment right to safety.  The court, therefore, construes plaintiff's motion as a motion for
27    summary judgment.
           [2]      Defendants Busig, Mitchell, Muhammad, and Williams are represented by the
28    California Attorney General's Office.  Defendant Hendricks is represented by outside counsel
      Cregger & Chalfant, LLP.

                                                1

# I. SUMMARY OF ALLEGATIONS AND PROCEDURE

This action proceeds on plaintiff's original verified complaint. Plaintiff names the following correctional officers as defendants: (1) Williams; (2) Muhammad; (3) Busig; (4) Mitchell; and (5) Hendricks. Plaintiff asserts a violation of his Eighth Amendment rights as a result of the named defendants being deliberately indifferent to a known safety risk. Plaintiff contends that defendant Williams was informed of the substantial risk of injury arising from plaintiff and his cellmate "coming to blows". Plaintiff also maintains that when plaintiff advised of the substantial risk of serious harm and concurrently requested a cell reassignment, defendant Williams "stated that he did not care about Plaintiff's hostile cell situation, that he was not going to separate Plaintiff and his cellmate." Plaintiff alleges in his verified pleading that at various times up to and including February 19, 2014, he also informed each of the defendants about the problem with his cellmate and the risk of serious injury, the failure to respond to such notice being the deliberate indifference that is the foundation of the Eighth Amendment claim here.

Plaintiff alleges that multiple requests to protect his safety were submitted to defendants, including a request some days later by Plaintiff's cellmate and the inmate in 9-227 that the "9 Building Second Watch Floor Officer, Defendant (C/O) T. Busig, separate Plaintiff and his cellmate." According to plaintiff, defendant Busig stated that he would not separate plaintiff and his cellmate unless he saw blood or blackeyes. Plaintiff claims that, later that day, he approached defendant Hendricks "about his hostile cell situation" and that he informed defendant Hendricks that he felt his safety was in jeopardy by remaining in the cell with his cellmate. According to plaintiff, defendant Hendricks refused to separate plaintiff and his cellmate and told him to return to his cell or face placement in administrative segregation. Plaintiff alleges that he informed defendant Mitchell of his safety concerns with the same result.

Finally, plaintiff states that he and his cellmate were involved in an altercation on February 19, 2014, that lasted several hours and resulted in severe injuries to plaintiff's face. According to plaintiff, defendant Hendricks walked by while this was going on, realized the two inmates were fighting, and ignored the situation. Plaintiff adds that defendant Mitchell also "peered into Plaintiff's cell as the physical altercation occurred and stated 'their [sic] in cell 240

trying to kill each other.'"  Plaintiff states that his cellmate was later placed in administrative segregation for the assault.

Plaintiff brings the pending Motion for Summary Judgement on the grounds that defendants were deliberately indifferent to a known safety risk, in violation of his rights under the Eighth Amendment.

Defendants bring cross motions for summary judgement, contending that plaintiff's allegations of deliberate indifference cannot be proven here in the absence of evidence that defendants were aware of a substantial risk of harm. Defendants also contend that plaintiff's complaint is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), in that success on plaintiff's Eighth Amendment claim would render invalid the administrative sanction arising from the subsequent altercation between plaintiff and his cellmate and so effect the duration of plaintiff's confinement. Finally, defendants in their respective cross motions for summary judgement, each contend that the defendant officers are entitled to qualified immunity.

The support for each of the pending motions is addressed below.

## II. BACKGROUND

### A.     Plaintiff's Evidence

In plaintiff's Verified Complaint (Doc 1) and the Declaration in Support of Plaintiff's Motion for Summary Judgment (Doc 49, p. 13-16), Plaintiff offers evidence in support of his pending Motion for Summary Judgement, including the undisputed fact that prior to and on February 19, 2014, plaintiff was housed at California State Prison-Solano "B" Facility, in (9) Building in cell 240. Also undisputed is the fact that defendants Muhammad, Williams, Busig, and Mitchell were each employed in various capacities as correctional authorities at the California State Prison-Solano. (Doc 45, p. 2) The defendants on duty during Third Watch at Facility B at CSP-Solano on February 19, 2014 included defendants Hendricks and Mitchell. (Doc 45, p. 2; Doc 39, p. 3-4). Defendant Busig worked an overtime shift that caused him to be in the "B" Facility at CSP-Solano on the morning of February 19, 2014. (Doc 45, p. 3).

/ / /

Material facts proffered in support of plaintiff's Motion, but disputed by defendants include (Doc 36):

1.     Inmate Barkus was placed inside of cell 240 without having the opportunity to discuss any possible in cell incompatibility issues with Plaintiff.

2.     Once the two are assigned to the same cell together the only recourse that anyone of the cellmates could undertake if in cell incompatibility issues develops would be to request a cellmate from building officers or sergeants.

3.     On and before February 19, 2014, Plaintiff informed numerous correctional officers and correctional sergeants that he was physically threatened by his cellmate.

4.     Before February 19, 2014, Plaintiff specifically informed Sergeants L. Williams and Muhammad that he was physically threatened by his cellmate and that he wanted a cell move to cell 9-227 or any one of the 20-30 empty cells in (9) building.

5.     Sergeants L. Williams and Muhammad refused to house Plaintiff in another cell and told Plaintiff that if he did not return to his cell, that he would be placed in Administrative Segregation (Ad-Seg).

6.     On February 19, 2014, Plaintiff and his cellmate and Evans who was housed in cell 227 asked Second Watch officer Busig for a cell move. Evans and Plaintiff wanted to swope (sic) cells with each other to alleviate Plaintiff's hostile cell situation.

7.     Defendant Busig told Plaintiff, his cellmate and Evans that he would not give them a cell move unless he saw blood or busted lips. Earlier Plaintiff alone had told officer Busig that he was physically threatened by his cell mate.

8.     Later on February 19, 2014, Plaintiff approached Third Watch floor officers defendants Hendricks and S. Mitchell and told them that he was threatened by his cellmate and that he was willing to move to cell 9-227 or any one of the 20-30 empty cells in 9 building in order to remove himself from a hostile cell situation.

9.     Officer Hendricks and S. Mitchell refused to rehouse Plaintiff.

10.     At approximately 6:15 p.m. Plaintiff and his cellmate returned to (9) building from evening chow. At that time, Plaintiff again asked officer Hendricks for a cell move.

11.     Plaintiff also asked officer Mitchell for a cell move.

12.     Both officers Hendricks and Mitchell refused to give Plaintiff a cell move. Officers Hendricks and Mitchell told Plaintiff that if he did not return to his cell that he would be sent to (Ad-Seg).

4

13.     Plaintiff then entered his cell along with his cellmate at approximately 6:30 p.m. at which time an assault of Plaintiff took place.

**B.      Defendants Busig, Mitchel, Muhammad, and Williams' Evidence**

Defendants' evidence is offered in support of their cross motion for summary judgment and in opposition to Plaintiff's pending motion. The evidence cited by defendants as Undisputed Material Facts in Support of (Defendants') Motion for Summary Judgment is in each instance disputed by plaintiff (Doc57). Defendants challenge each of plaintiff's disputes and offer the following evidence in support of the defense motion and in opposition to plaintiff's motion (Doc 45):

1.      Unless an inmate reported particularized safety and/or enemy concerns to custody staff, inmates were required to accept their cell assignments. (Decl. Busig ¶¶ 5-8; Decl. Mitchell ¶¶ 5-8; Decl. Muhammad ¶¶ 5-8; Decl. Williams ¶¶ 5-8.)

2.      If Plaintiff had reported compatibility issues with his cellmate to Defendants, or another officer in his housing unit, on any date, including February 19, 2014, officers would have given Plaintiff the opportunity to find a new cellmate and initiate a non-emergency compatibility or convenience move. (Decl. Busig ¶¶ 5-8; Decl. Mitchell ¶¶ 5-8; Decl. Muhammad ¶¶ 5-8; Decl. Williams ¶¶ 5-8; Pl.'s Depo. 54:11-15.)

3.      For a compatibility, or convenience move, Plaintiff could have found an alternate cellmate in his housing unit that was willing to double cell with him. Plaintiff also would need to reach an agreement with his cellmate, and the other inmate's cellmate to switch cells. (Decl. Busig ¶¶ 5-8; Decl. Mitchell ¶¶ 5-8; Decl. Muhammad ¶¶ 5-8; Decl. Williams ¶¶ 5-8.)

4.      If Plaintiff had reported safety and/or enemy concerns with his cellmate and/or told Defendants, or other officers in his housing unit, that he and his cellmate were going to fight, the housing unit officers on duty would have immediately removed Plaintiff and/or his cellmate from the cell pending further investigation. (Decl. Busig ¶¶ 5-8; Decl. Mitchell ¶¶ 5-8; Decl. Muhammad ¶¶ 5-8; Decl. Williams ¶¶ 5-8.)

5.      Before February 19, 2014, Plaintiff had no documented enemy concerns with his cellmate.  (Pl.'s Depo. 36:14-17.)

6.      Plaintiff asked Defendant Busig for a cell move on the morning of February 19, 2014, while Busig worked an overtime shift in Plaintiff's building. Defendant Busig asked Plaintiff twice if he had safety concerns with his cell (Decl. Busig ¶ 3, Ex 1).

/ / /

/ / /

7. Plaintiff denied having any particularized safety concerns with his cellmate to Defendant Busig on the morning of February 19, 2014. (Decl. Busig ¶ 3, Ex. 1; Pl.'s Depo. 38:9-20, 41:9-14, 49:8-18, 53:20-23.)

8. Plaintiff did not report any particularized safety concerns with his cellmate to Defendant Muhammad on February 19, 2014. (Decl. Muhammad ¶ 2, 4, Ex. 1; Pl.'s Depo. 38:9-20, 41:5-14, 49:8-18, 53:20-23, 57:17-25, 58:10-17.)

9. Plaintiff did not report any particularized safety concerns with his cellmate to Defendant Williams on February 19, 2014. (Decl. Williams ¶ 2, 4, Ex. 1; Pl.'s Depo. 32:15-23, 41:5-14, 49:8-18, 53:20-23.)

10. Plaintiff did not report any particularized safety concerns with his cellmate to Defendant Mitchell on February 19, 2014. (Decl. Mitchell ¶ 2-4; Pl.'s Depo. 39:18-25, 40:1-2, 40:14-23; 41:5-14, 49:8-18, 53:20-23.)

11. Defendants Busig, Muhammad, and Williams were not on duty in Plaintiff's building during Third Watch on February 19, 2014, when Plaintiff fought with his cellmate. (Decl. Busig ¶¶ 2-4, Ex. 1; Decl. Muhammad ¶¶ 2-4, Ex. 1; Decl. Williams ¶¶ 2-4, Ex. 1; Pl.'s Depo. 60:2-6.)

12. On February 19, 2014, Plaintiff received a Rules Violation Report, log number SB-14-02-0150, for fighting with his cellmate. (Decl. Walker., Ex. B; Pl.'s Depo. 15:13-19, 31:7-18.)

13. After a full disciplinary hearing, the Senior Hearing Officer found Plaintiff guilty of fighting by a preponderance of the evidence and was assessed a ninety-day credit forfeiture. (Decl. Walker., Ex. B at 3; Pl.'s Depo. 31:12-25, 32:1-2.)

14. Plaintiff is serving a life sentence of twenty-five years to life with the possibility of parole. (Decl. Walker., Ex. C; Pl.'s Depo. at 15:13-19.)

15. The ninety-day credit forfeiture that Plaintiff received as a result of the Rules Violation Report, log number SB-14-02-0150, extended his earliest possible parole date. (Decl. Walker., Ex. D; Pl.'s Depo. at 15:13-19; 31:12-25, 32:1-2.)

C. **Defendant Hendricks' Evidence**

Defendant Hendricks proffers evidence both in opposition to plaintiff's pending Motion and in support of this defendant's cross motion for Summary Judgment. It is undisputed as between plaintiff and defendant Hendricks that plaintiff was an inmate at California State prison-Solano as of February 19, 2014, that plaintiff informed defendant Hendricks on February 19, 2014 that plaintiff wished to be transferred to a different cell, and that following a fighting

6

incident defendant Hendricks issued plaintiff a rules violation, for which plaintiff was found guilty of fighting.

Disputed material evidence by defendant Hendricks includes:

1.      Plaintiff and his cellmate had been assigned to the facility and unit for the entire time that Hendricks was assigned there. (Hendricks Dec., ¶¶ 1-3, 9).

2.      Prior to the day of the incident, Hendricks was not aware that there were any problems or potential violence between plaintiff and his cellmate. (Hendricks Dec., ¶¶ 1-4, 9).

3.      On the day of the incident, at approximately 3:00 p.m., plaintiff approached Hendricks and stated that he wished to be transferred to a different cell. His reason as stated was to the effect that he and his cellmate were incompatible. He did not state there would be violence between them. This was the first time plaintiff expressed concerns to Hendricks regarding his cellmate or requested a cell transfer. (Hendricks Dec., ¶ 4; Plaintiff's Depo: 58:5-59:15).

4.      Hendricks understood that as of February 19, 2014, CDCR regulations allowed for an inmate to be removed from his cell in instances of threatened violence, but in such circumstances an inmate requesting removal would be placed in administrative segregation (ASU) pending completion of an investigation.  Hendricks explained these regulations to Plaintiff, who advised that he did not want that option. (Hendricks Dec., ¶ 6).

5.      Hendricks was not told by plaintiff that there was a threat of violence between plaintiff and his cellmate, and Hendricks did not infer such from the information supplied by plaintiff. (Hendricks Dec Para 7; Plaintiff's Depo 58:5-59-15).

6.      When plaintiff and his cellmate approached defendant Hendricks for a second time on February 19, 2014, and again requested a cell transfer, Hendricks again explained to them the required process. Hendricks asked them if violence would result from the two inmates returning to their cell. When each inmate denied that violence would result, Hendricks directed them back to their cell. (Hendricks Dec., ¶ 8).

7.      As a result of the February 19, 2014 incident, plaintiff was issued a notice of rules violation and following hearing was determined to be guilty of fighting in violation of CCR sec 3005(d)(1). (Rules Violation Report no. SB-14-02-0150).

/ / /

/ / /

/ / /

/ / /

7

# III. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

### A. **Plaintiff's Motion**

Plaintiff claims defendants were deliberately indifferent to a known safety risk. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing,

shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Here plaintiff has asserted in his verified pleading that "plaintiff made several correctional staff specifically aware that his safety was being placed in danger by remaining with a specific prisoner" (Doc 1, p 3, ¶ IV). Plaintiff's handwritten pro se document is to be liberally construed. Estelle v. Gamble, 429 U.S. 97, 106, (1976); citing the unanimous decision in Haines v. Kerner, 404 U.S. 519 (1972), "a pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for
/ / /

failure to state a claim if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"

The evidence drawn from Plaintiff's pleading is underscored by the specific evidence offered though his declaration under oath in support of his Motion for Partial Summary Judgment. (Doc 1). In his Declaration, plaintiff states:

> Plaintiff made defendant Sargents [sic] L. Williams, Muhammad and Officers Busig, Hendricks and S. Mitchell specifically aware that he felt threatened by his cellmate and though the persistent requests for a cellmate each defendant was aware of the risks posed to plaintiff and ignored such risk…(Doc 1, pg 14).

Plaintiff's evidence that he sustained serious harm in the wake of defendants' inaction (Doc 1) stands as compelling proof that the risk of harm, which was the subject of plaintiff's pleas, was not illusory. However, even setting aside the occurrence of the fight between plaintiff and his cellmate as a separate issue, the Court finds that the balance of plaintiff's evidence, however inartfully presented, is sufficient to establish the existence of a substantial risk of serious harm to plaintiff. As such, this evidence affords the requisite showing of the objective element of plaintiff's deliberate indifference claim.

However, to prove the deliberate indifference that is the gravamen of plaintiff's Eighth Amendment charge, under Farmer, plaintiff must also establish the subjective element of that claim. The subjective element of a claim of deliberate indifference in violation of Eighth Amendment rights addresses the extent to which a defendant prison official had the requisite knowledge of a substantial risk of serious harm. The Supreme Court in Farmer expressly provided:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmates humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 838.

/ / /

/ / /

Noting that an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate, the Court in Farmer found that it is enough that the prison official acted or failed to act despite his knowledge of a substantial risk of harm.  Id. at 842. The Farmer court further cautioned that a prison official may not escape liability for deliberate indifference by showing that:

> . . . [W]hile he was aware of the obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health."
>
> Id. at 843.

Directly applicable to the instant case is the guidance of the Farmer Court that:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. Id.

Such a question of fact as to what the defendant prison officials knew, and when they knew it, is extant here. Though plaintiff proffers evidence that he advised each of the defendants of the pending safety issues, defendants deny that they were so informed. Defendant Busig acknowledges in his declaration that he received information from plaintiff about his desire to move to a different cell (Doc 45, para 4), but denies that receiving information about plaintiff fearing for his safety. Defendant Hendricks similarly acknowledges communications from Plaintiff about the need for a new cell assignment because "he and his cellmate were incompatible" (Doc 39, para 4), but denies that on that occasion or thereafter that he knew of or inferred a threat of violence (Doc 39, para 7-8). Defendants Mitchell, Muhammad, and Williams each deny receiving any information from plaintiff, despite having been regularly assigned to plaintiff's housing unit during the relevant period. (Doc 45).

/ / /

/ / /

/ / /

/ / /

1      In support of their contentions, defendants also cite to selected portions of

2   plaintiff's Deposition.  Defendant Hendricks' citation to plaintiff's deposition emphasizes

3   plaintiff's lack of specific recollection of what was said, then reasons that the defendant officers

4   did not have information of a "legitimate and immediate threat." (Doc 39-1, p. 3, ¶ 39; Doc 39-4,

5   p. 6).  Defendants Muhammad, Williams, Busig and Mitchell maintain that even assuming

6   defendants were each advised of plaintiff's "vague 'safety' and concerns," defendants are without

7   "subjective culpability" because plaintiff has failed to establish that defendants had even a mere

8   suspicion that an attack would occur, let alone any actual knowledge of imminent danger. (Doc

9   45-3, p. 8).

10      However, contrary to defendants' assertions, plaintiff has presented evidence of

11  specific notice to defendant officers. Under questioning from defendants' counsel, plaintiff

12  testified in deposition:

13          Q.      Now, did you tell any officers that you had any safety
14  concerns?

15          A.      Yes, sir, I did. As soon as I seen (sic) where this issue was
    progressing to, I let every C/O that worked in that building know that we
16  were having an issue, and he (plaintiff's cellmate) did the same thing, to
    my understanding, every single one.

17      Brandon Depo., March 29, 2018, p. 36, ll. 18-24.

18  In further deposition testimony, plaintiff explained:

19          Q.      But what did you tell them exactly?

20          A.      I told them we were having issues in the cell, and this
    would be a way for us to get around this without having anything
21  happen—just move him, and we both agreed on this.  So we didn't
    understand why they just wouldn't move him. He wanted to move, and we
22  both knew we were trying to—we were trying to divert this even
    becoming an issue between us.
23

24      Id. at p. 37, ll. 3-11.

25                          * * *

26          Q.      Did you say to any officer that "I'm afraid for my safety?"

27          A.      Yes, sir, I did.

28          Q.      Which officer did you say that to?

                                    13

A.     I said it to Busig, I said it to Holycross. I told Muhammad the same thing, and I told Mitchell.

Id. at p. 37, ll. 12-20.

* * *

Q.     Now, you're telling me, though, you said these things to these people, but you can't recall when?

A.     I told them—it was prior to the incident happening.

Q.     When you say "prior" though, you have to be little more specific. When?

A.     A week, a week and a half would be the first time I really put them on like, "All Right. This is going to be an issue. Can you help us resolve this without it becoming physical?"
And, you know, you see what the response was.

Q.     Did you tell any officers that you were afraid?

A.     Yes, sir. I told them that I didn't want to go back in the cell.

Q.     And you're testifying today that you said that on multiple occasions?

A.     Yes, sir, I am.

Id. at p. 37, ll. 21-25; p. 38, ll. 1-15.

Plaintiff's Separate Statement and Declaration in Support of the pending motion further evidence notice to defendants Hendricks and Mitchell:

Plaintiff told both Officers Hendricks and Mitchell that he was refusing to return to his cell because of his safety concerns" Plaintiff's Undisputed Facts, No. 28.

Plaintiff made defendant Sargent L. Williams, Muhammed, and Officers Busig, Hendricks, and S. Mitchell specifically aware that he was threatened by his cellmate and through the persistent requests for a cell move (sic)each defendant was aware of the risk posed to plaintiff and ignored such risk. Doc 49, p 16, Plaintiff's Dec. p 15.

The conflicting evidence of the subjective element of the deliberate indifference claim defines a triable issue here, and plaintiff is not entitled to judgment as a matter of law on the claim of deliberate indifference.

/ / /

14

**B.**     **Defendants' Cross-Motions**

In their separate cross-motions for summary judgment, defendants each raise the following three arguments: (1) plaintiff cannot establish either the subjective or objective components of his Eighth Amendment safety claim; (2) plaintiff's claim is not cognizable because plaintiff was found guilty of a rules violation and assessed a loss of good-time credits; and (3) defendant Hendricks is entitled to qualified immunity.

1.     Defendants Have not Established that They are Entitled to Judgment as a Matter of Law on Plaintiff's Eighth Amendment Claim

Defendants' contend that plaintiff has failed to satisfy either the objective or subjective elements necessary to prove the alleged Eighth Amendment violation arising from defendants' deliberate indifference to a threat of serious harm from another prisoner. Berg v. Kincheloe, 794 F. 2d. 457 (9th Cir. 1986). Defendants rely, inter alia, on the holdings of Farmer v. Brennan, 511 U.S. 825 (1994). While the Farmer case is instructive here, when the evidence before this court is applied to the provisions of that High Court precedent, Farmer does not support defendants' claim for relief via summary judgment, but instead underscores the existence of triable issues of material fact.

In Farmer, the Supreme Court concluded that a "prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it" 511 U.S. 848. See also Helling v. McKinney, 509 U.S. 25 (1993). In reaching that holding, the Court held that both objective and subjective criteria must be established to perfect a claim for deliberate indifference in violation of the Eighth Amendment.

As detailed above, defendants have failed to demonstrate that there existed no "substantial risk of serious harm". Plaintiff's evidence is sufficient to satisfy that objective element of the deliberate indifference claim here. However, as also detailed above, the evidence in support of the subjective element of the deliberate indifference claim is in dispute, and poses triable issues to be resolved at trial. Judgment as a matter of law is accordingly inappropriate here, whether in response to plaintiff's or defendants' claims for relief.

1            2.      <u>Cognizability of Plaintiff's Claim</u>

2         According to defendants, plaintiff's Eighth Amendment safety claim is not

3 cognizable pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and <u>Edwards v. Balisok</u>, 520

4 U.S. 641 (1997), because plaintiff was found guilty of a rules violation as the aggressor in the cell

5 fight and assessed a loss of good-time credits.  In their respective Motions for summary

6 Judgment, defendants each charge that plaintiff's claim is barred because success on the merits

7 would necessarily imply the invalidity of the disciplinary finding that plaintiff was the aggressor.

8         Defendants' arguments erroneously assert that plaintiff's Eighth Amendment

9 claim is precluded by the fact that plaintiff received a rules violation for fighting, which discipline

10 caused him to forfeit good time credits. However, this characterization ignores the distinction

11 between two separate events; the alleged violation of plaintiff's constitutional rights arising from

12 defendants' deliberate indifference to plaintiff's allegedly repeated requests for safety and

13 protection from a hostile cell environment (Doc 1), and the subsequent occurrence, nowhere the

14 subject of plaintiff's requested relief, of plaintiff's discipline for a subsequent fight, resulting in a

15 ninety day loss of behavioral credit (Doc 51, pp 43-52). The absence of a challenge to the fact or

16 duration of plaintiff's custody precludes the application of the favorable termination rule relied

17 upon by defendants, and defeats their proffered grounds for summary judgement here.

18         The Ninth Circuit decision in <u>Ramirez v. Galaza</u>, 334 F. 3d 850 (9th Cir. 2003),

19 cited by all defendants, addressed these distinctions. In <u>Ramirez</u>, the Court stated:

20                Suits challenging the validity of prisoner's continued incarceration
               lie within the "heart of habeas corpus", whereas "a 1983 action is a proper
21                remedy for a state prisoner who is making a constitutional challenge to the
               conditions of his prison life, but not the fact or length of his custody.
22

               <u>Id.</u> (citing <u>Priser v. Rodriguez</u>, 411 U.S. 475, 491-92 (1973)); <u>see also</u>
23                <u>McCarthy v. Bronson</u>, 500 U.S. 136, 141-42 (1991).

24

25         Had plaintiff Brandon here sought to challenge his sentence, or obtain relief from

26 the discipline determination cited by defendants (Doc 51, p 45), such claims would be

27 appropriately limited to habeas actions.  <u>See</u> 28 U.S.C. 2254.  However, no such claims have been

28 asserted by plaintiff (Doc 1). Indeed, when questioned in deposition by counsel for defendants,

plaintiff confirmed under oath:

> Q.     Now, did you file this lawsuit with the intention of getting the RDR dismissed?
>
> A.     No, sir, it's not. I filed this lawsuit because I don't want what happened to me to happen to somebody else. This—all of this whole situation could have been avoided. That's why I filed this lawsuit.
>
> Brandon Deposition, p. 32, ll. 3-10.

Plaintiff's challenge in the pending action went not to any effort to reduce the duration of his confinement, but rather to the conditions of his prison life. His pleading charged a violation of his constitutional rights under the Eighth Amendment and plaintiff's "right to be free from cruel and unusual punishment when correctional staff failed to remove Plaintiff from a hostile cell environment." (Doc 1, ¶ IV). This claim is cognizable as pled in plaintiff's verified pleading, without allegation of specific damages and without a challenge to the subsequent discipline action. Plaintiff's action does not seek to set aside the consequences of the rule violation to which plaintiff admitted, nor to affect the length of this inmate's confinement.

A successful result in plaintiff's Eight Amendment deliberate indifference action would not "imply the invalidity of his conviction or sentence." Heck v. Humphrey, 512 U.S. 477, 487 (1994); Edwards v. Balisok, 520 U.S. 641 (1997). The violation of constitutional rights alleged in plaintiff's action arise from defendants' failed response to plaintiff's repeated requests for a safe environment while incarcerated (Doc 36), and not from any alleged wrongful act or omission relating to his original conviction or the term of his confinement.

Applicability of the favorable termination rule turns solely on whether a successful 1983 action would necessarily render invalid a conviction, sentence or administrative sanction that effected the length of the prisoner's confinement. Ramirez v. Galaza, 334 F.3d 850, 858 (9th. Cir. 2003) (holding that the favorable termination rule of Heck and Edwards does not apply to challenges to prison disciplinary hearings where the administrative sanction imposed does not affect the overall length of confinement and, thus, does not go to the heart of habeas); see also Wilkerson v. Wheeler, 772 F.3d 834 (9th Cir. 2014) (discussing loss of good-time credits). Where, as here, plaintiff's successful prosecution of the Section 1983 action would not result in

17

an earlier release from incarceration, the plaintiff's action does not intrude upon the heart of habeas jurisdiction, and is not barred under Heck and its progeny. Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641, (1997).

The favorable termination rule affords no basis for summary judgment here, and defendants are accordingly without grounds for their requested relief.

### 3.  Qualified Immunity

Defendants argue they are entitled to qualified immunity because the undisputed evidence shows that they reasonably and correctly believed their conduct did not violate plaintiff's constitutional rights.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right.  See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the

right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Here, the appropriate initial inquiry under the Saucier criteria goes to whether the rights at issue are clearly established. Heeding the counsel of the Saucier holding that "this inquiry must be taken in the light of the specific context of the case," 533 U.S. at 202, the Court here finds that the right at issue is plaintiff right to protection from violence at the hands of other prisoners. Farmer 511 U.S. 825, 833-37; ("the Eighth Amendment does not outlaw cruel and unusual "conditions", it outlaws cruel and unusual "punishments"). Viewing the evidence in the light most favorable to plaintiff, while concurrently recognizing that the court must define the right more narrowly than the constitutional provision guaranteeing the right (Eighth Amendment) but more broadly than the factual circumstances surrounding the alleged violation here, see Borg, 60 F. 3d 664; this Court finds that as of plaintiff's efforts to notify defendant officers of his concerns about plaintiff's cell assignment, there existed a clearly established right to safety.

///

Defendants' awareness of the right is evident in the facts offered in support of

defendants' respective motions (Doc 45) including:

> Unless an inmate reported particularized safety and/or enemy concerns to
> custody staff, inmates are required to accept their cell assignments.

> If Plaintiff had reported compatibility issues with his cellmate to
> Defendants, or another officer in his housing unit, on any date, including
> February 19, 2014, officers would have given Plaintiff the opportunity to
> find a new cellmate and initiate a non-emergency compatibility move.

> Decl. Busig, ¶¶ 5-8; Decl. Mitchell, ¶¶ 5-8; Decl. Muhammad, ¶¶ 5-8;
> Decl Williams, ¶¶ 5-8; Plaintiff's Depo., p. 54, ll. 11-15.

Defendant Hendricks declared in support of his Motion that:

> Hendricks understood that as of February 19, 2014, CDCR regulations
> allowed for an inmate to be removed from his cell in instances of
> threatened violence, but in such circumstances an inmate requesting
> removal would be placed in administrative segregation (ASU) pending
> completion of an investigation.

> Hendricks Decl., ¶ 6.

The extent to which the defendants here understood that their actions or inactions

gave rise to a violation of plaintiff's protected rights is a triable issue of material fact. As

discussed above in the analysis of the subjective element of the deliberate indifference claim,

what defendants knew and when they knew is in dispute. Plaintiff and defendants are in conflict

on the issue of whether the defendants had the requisite knowledge of a substantial risk of serious

harm. However, to the extent that the contours of the right to safety and protection are apparently

clear to these defendants, these officers are not entitled to qualified immunity here. A reasonably

competent officer is charged with knowing the law which governs his conduct, and by

defendants' own acknowledgements, the standards for safe confinement of plaintiff and his fellow

inmates were clear.

/ / /

/ / /

/ / /

/ / /

/ / /

# V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.     Plaintiff's Motion for Summary Judgement (Doc. 49) be denied; and

2.     The cross Motions for Summary Judgment by defendants Hendricks, Busig, Williams, Mitchell, and Muhammad (Docs. 39 and 45) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  January 31, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE